NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

WINDERTING INVESTMENTS, LLC, )
a Florida limited liability company, and )
HELEN EMILY KWOK, an individual, )
)
      Petitioners, )
)
v. )     Case No: 2D14-6
)
GREGORY FURNELL, an individual, )
DARLENE BRADEN, an individual, )
and JAMIE JOHNSTON, n/k/a JAMIE )
TANNER, an individual, )
)
      Respondents. )
_____ )

Opinion filed August 1, 2014.

Petition for Writ of Certiorari to the Circuit
Court for Polk County; John M. Radabaugh,
Judge.

Thomas C. Saunders and Alan L. Perez
of Saunders Law Group, Bartow, for
Petitioners.

Daniel F. Pilka and Dixie T. Brady of
Pilka & Associates, P.A., Brandon, for
Respondents.

WALLACE, Judge.

      Helen Emily Kwok, a nonparty in the proceedings in the circuit court, and

Winderting Investments, LLC (Winderting), seek review by certiorari of an order denying

a motion for a protective order seeking to prevent the discovery of Mrs. Kwok's personal financial information by three judgment creditors of KMPB Group USA, Inc. (KMPB). Because the judgment creditors failed to establish any facts demonstrating that the discovery of Mrs. Kwok's personal financial information was reasonably calculated to identify or to lead to the discovery of assets that could be reached to satisfy the judgment, we grant the writ and quash the circuit court's order.

## I.  THE FACTUAL AND PROCEDURAL BACKGROUND

In January 2005, Mrs. Kwok and Michael Kwok formed two entities in Florida:  KFSL Investments, Inc. (KFSL), and Imperial Management Group, Inc.  KFSL was converted to a limited liability company with a similar name in 2010.  In May 2008, the name of Imperial Management Group, Inc., was changed to KMPB Group USA, Inc. For the sake of clarity, we will refer to this entity as KMPB in the remainder of this opinion.

The principal asset of KFSL was a hotel located in Lakeland known as the "Imperial Swan Hotel & Suites" (the Hotel).  KMPB managed the Hotel in accordance with a written contract with KFSL.  Because KMPB was a single purpose entity formed to manage the Hotel, it had little or no hard assets.  Michael Kwok served as the registered agent and president or sole managing member of KFSL until 2010.  In 2012, Mrs. Kwok became the registered agent and sole managing member of KFSL.  Mrs. Kwok was the president of KMPB until 2011.  The record does not disclose the identities of the shareholders of these companies, but Mrs. Kwok seems to have had some association with or connection to both of them.

In 2006 and early 2007, Gregory Furnell, Darlene Braden, and Jamie Johnston, n/k/a Jamie Tanner (the judgment creditors), became employed at the Hotel. KMPB issued the paychecks to the judgment creditors for their services. On December 8, 2008, the judgment creditors filed an action alleging a variety of employment and related claims against "KMPB Group, USA D/B/A Imperial Swan Hotel & Suites" and against an individual named Sherman Clark. Following service of process, the trial court entered defaults against both defendants and subsequently conducted a nonjury trial on damages. The judgment creditors ultimately recovered a judgment for $3,000,773 against KMPB. Of this amount, the trial court ordered Mr. Clark to pay $250,000 to Jamie Johnston, n/k/a Jamie Tanner.

On March 1, 2012, at a time when the judgment remained unpaid, KFSL executed a special warranty deed transferring ownership of the Hotel property to Winderting. Mrs. Kwok was then the sole member/manager of KFSL and Winderting; she was also the registered agent and the sole officer of KMPB. At this point in the narrative, the reader should bear in mind that the judgment was entered against KMPB, the management company, not against KFSL, the owner of the Hotel property.

On November 6, 2012, after the judgment creditors discovered the transfer of the ownership of the Hotel property from KFSL to Winderting, they filed an "Emergency Motion for Temporary Restraining Order and to Appoint Receiver." In this motion, the judgment creditors moved for the appointment of a "receiver for the Imperial Swan Hotel & Suites to take all actions necessary to collect the judgment." The judgment creditors also alleged that: (1) the transfer of the ownership of the Hotel is void; (2) the Kwoks created Winderting for the sole purpose of attempting to defraud

creditors; (3) the Kwoks were always the sole owners of the Hotel and held themselves out as such; (4) the Kwoks were still in the possession of the Hotel; (5) Mrs. Kwok, Mr. Kwok, KFSL, and Winderting should be impleaded as defendants in proceedings supplementary; (6) Mrs. Kwok and Mr. Kwok dominate and control KMPB, KFSL, and Winderting in such a way that these entities are merely the "alter egos" of each other and are used for the personal benefit of Mrs. Kwok and Mr. Kwok; and (7) the judgment "is enforceable and may be executed against the property currently owned by Winderting."

The appendices provided by the parties do not include an order specifically granting the "Emergency Motion for Temporary Restraining Order and to Appoint Receiver." Insofar as we can tell, the trial court did not enter a restraining order or appoint a receiver of the Hotel property. However, on December 10, 2012, the trial court entered an order titled "Order on Plaintiffs' Motion to Add Defendant." This order states that Winderting is added "as a party defendant to this lawsuit." The status of Winderting in the proceedings as a result of this order is uncertain. There is no order reopening the underlying action or initiating proceedings supplementary under section 56.29, Florida Statutes (2012). One thing is clear—the trial court did not amend the judgment to add Winderting or any other person or entity as a judgment debtor.

From this point on, the parties appear to have treated the Emergency Motion as a supplemental pleading under Florida Rule of Civil Procedure 1.190(d). The judgment creditors commenced a new round of discovery. Here, we arrive at the subject of the petition for certiorari filed by Mrs. Kwok and Winderting. The judgment creditors issued subpoenas duces tecum without deposition to three nonparties. The

subpoenas were directed to Bank of America, TD Bank, and Westpac Bank.  The subpoena to Bank of America sought all bank account records for KMPB as well as all checking and savings account records for Mrs. Kwok from January 1, 2006, to the present.  The subpoenas to TD Bank and Westpac Bank sought only Mrs. Kwok's bank account records for the same period.

Mrs. Kwok[1] and Winderting moved for a protective order blocking the production of Mrs. Kwok's financial information from the three banks.  No objection was made to the production of the financial records of KMPB, the judgment debtor.  In the motion, Mrs. Kwok and Winderting observed that they had already provided "a litany of banking information," including bank statements for every company involved in the case.  Mrs. Kwok and Winderting objected solely to the production of Mrs. Kwok's personal financial information.  After a hearing, the circuit court entered an order denying the motion for a protective order.  This petition for certiorari followed.

## II.  THE AVAILABILITY OF RELIEF BY CERTIORARI

A petition for certiorari is appropriate to review a discovery order when the "order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal."  Allstate Ins. Co. v. Langston, 655 So. 2d 91, 94 (Fla. 1995) (citing Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097, 1099 (Fla. 1987)).  An order compelling the production of documents by a nonparty is reviewable by certiorari because he or she has no adequate remedy by appeal.  Price v. Hannahs, 954 So. 2d

---

[1]At this point, Mrs. Kwok was known as Helen Emily James.  In the interest of clarity, we will continue to refer to her as Mrs. Kwok.

- 5 -

97, 100 (Fla. 2d DCA 2007) (citing Nussbaumer v. State, 882 So. 2d 1067, 1072 (Fla. 2d DCA 2004)).  Thus, in order to obtain relief, the petitioner must demonstrate a departure from the essential requirements of law and material injury.  See id. (citing Syken v. Elkins, 644 So. 2d 539 (Fla. 3d DCA 1994), approved, 672 So. 2d 517 (Fla. 1996)).

## III.  THE APPLICABLE LAW

Florida Rule of Civil Procedure 1.560(a) provides as follows: "In aid of a judgment, decree, or execution the judgment creditor or the successor in interest, when the interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules."  "A judgment creditor should be allowed broad discovery into the debtor's finances."  Jim Appley's Tru-Arc, Inc. v. Liquid Extraction Sys. Ltd. P'ship, 526 So. 2d 177, 179 (Fla. 2d DCA 1988).  The matters relevant to postjudgment discovery "are concerned with information that will enable the judgment creditor to collect the debt."  Regions Bank v. MDG Frank Helmerich, LLC, 118 So. 3d 968, 969 (Fla. 2d DCA 2013) (citing Citibank, N.A. v. Plapinger, 461 So. 2d 1027 (Fla. 3d DCA 1985)).  In cases that have already proceeded to the entry of a money judgment,

> The creditor has the right to discover any assets the debtor might have that could be subject to levy or execution to satisfy the judgment, or assets that the debtor might have recently transferred.  Broad discovery of a debtor's assets is permitted postjudgment—the debtor's assets, whether held individually or jointly, are relevant to collecting the debt owed.

Id. at 970 (citations omitted).  "If a proper predicate is laid, someone other than the judgment debtor may be required to submit to financial discovery."  Gen. Elec. Capital

Corp. v. Nunziata, 124 So. 3d 940, 943 (Fla. 2d DCA 2013); see also Jim Appley's Tru-Arc, 526 So. 2d at 179 ("[W]e do agree with the trial court's rulings insofar as they prohibited discovery into the separate income and assets of [the judgment debtor's wife], individually, until a proper predicate has been shown.") (citing Rose Printing Co. v. D'Amato, 338 So. 2d 212 (Fla. 3d DCA 1976)).  When a judgment creditor seeks to discover the personal financial information of a nonparty, he or she bears the burden of proving that the information sought is relevant or is reasonably calculated to lead to the discovery of admissible evidence.  Rowe v. Rodriguez-Schmidt, 89 So. 3d 1101, 1103 (Fla. 2d DCA 2012) (citing Spry v. Prof'l Emp'r Plans, 985 So. 2d 1187, 1188-89 (Fla. 1st DCA 2008)).

## IV.  DISCUSSION

The trial court's order denying the motion for protective order quotes from Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1117 (Fla. 1984), which states: "[C]ourts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation . . . is a mere instrumentality or agent of another corporation or individual owning all or most of its stock." (quoting Mayer v. Eastwood, Smith & Co. 164 So. 684, 687 (Fla. 1935)).  The circuit court's reference to the Dania Jai-Alai case is appropriate as far as it goes.  However, standing alone, the circuit court's reliance on the proposition stated in Dania Jai-Alai overlooks certain larger principles, which are worth restating here:

> Every corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders.  The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the

conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. If this were the rule, it would completely destroy the corporate entity [as] a method of doing business and it would ignore the historical justification for the corporate enterprise system.

We therefore hold that in order to justify the issuance of a rule directing individual stockholders to show cause why they should not be held personally accountable for the corporation's debts, there should be a preliminary showing that the corporation is in actuality the alter ego of the stockholders and that it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes, or in some fashion that the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders, or that the corporate structure was not bona fidely established or, in general, that property belonging to the corporation can be traced into the hands of the stockholders.

It isn't sufficient merely to show that the corporation exists and that there are a limited number of stockholders doing business in good faith through the corporate entity. From a procedural standpoint we hold that a showing similar to that suggested in summary above be made before the rule nisi is issued and directed against the individual stockholders. If this requirement were not made then every judgment against a corporation could be exploited as a vehicle for harassing the stockholders and entering upon fishing expeditions into their personal business and assets.

Advertects, Inc. v. Sawyer Indus., Inc., 84 So. 2d 21, 23-24 (Fla. 1955).

Here, the judgment creditors have not made a showing that Mrs. Kwok formed or used KMPB, KFSL, or Winderting for the purpose of perpetuating a fraud. Mrs. Kwok may have owned or had an interest in all three of these companies at various times; the details are not entirely clear from the record. However, there is no evidence that the corporate formalities for these entities were not observed or that Mrs. Kwok improperly diverted money or other property from the corporate entities to herself.

- 8 -

Unproven allegations containing terms such as "alter ego" and "fraud" are not a substitute for the kind of evidence deemed essential by the Florida Supreme Court in Advertects to hold stockholders personally liable for corporate debts. Furthermore, the fact of the transfer of the Hotel property from KFSL to Winderting does not enlarge the judgment creditors' rights. The judgment creditors did not sue or obtain a judgment against KFSL. It follows that the judgment creditors were not harmed by KFSL's transfer of the Hotel property to Winderting.

## V.  CONCLUSION

To summarize, the judgment creditors failed to carry their burden of showing that the discovery of Mrs. Kwok's personal financial information was relevant or reasonably calculated to lead to the discovery of admissible evidence. The judgment creditors obtained their three million-dollar judgment against KMPB, a management company that apparently had insufficient assets to satisfy the judgment. Mrs. Kwok was associated with both KMPB and KFSL, a separate company that owned the Hotel managed by KMPB. These facts—without more—did not give the judgment creditors carte blanche to inquire into Mrs. Kwok's personal financial information. In order to inquire into the personal financial information of a nonparty such as Mrs. Kwok, the judgment creditors were required to lay a proper predicate. That predicate would necessarily include a showing that the proposed financial discovery "would encompass matters identifying or leading to the discovery of assets available for execution." Nunziata, 124 So. 3d at 943 (quoting 4 Bruce J. Berman, Berman's Florida Civil Procedure ¶ 560.03[5] (2013)). Because the judgment creditors failed to lay such a predicate, the trial court departed from the essential requirements of law in entering the

order that denied Mrs. Kwok's motion for protective order.  For this reason, we grant the writ and quash the circuit court's order.

Writ granted; order quashed.


ALTENBERND and SLEET, JJ., Concur.